IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

TAMMYE PIRIE; and
MILES PIMENTEL,

    Plaintiffs,
v.

MERRICK B. GARLAND, Attorney General,
in his official capacity as the Head of the U.S. Department of Justice;
THE UNITED STATES DEPARTMENT OF JUSTICE,
and its Office of Violence Against Women;
MIGUEL CARDONA, Secretary of Education,
in his official capacity as the Head of the U.S. Department of Education; and
THE UNITED STATES DEPARTMENT OF EDUCATION,

    Defendants.

___

**PLAINTIFFS' ORIGINAL COMPLAINT TO COMPEL AGENCY ACTION**
___

Plaintiffs Tammye Pirie and Miles Pimentel bring this action under the Administrative Procedure Act, *see* 5 U.S.C. §§ 551–559, 701–706, to compel unlawfully withheld and unreasonably delayed agency action, and seeking relief for Defendants' refusal to issue a final order in Plaintiffs' underlying administrative action, Department of Justice Office of the Inspector General Case No. 2015-007568, regarding their National Defense Authorization Act ("NDAA") complaint for whistleblower retaliation. In support thereof, Plaintiffs allege the following:

**STATEMENT OF THE CASE**

1. This case is about Plaintiffs' nearly ten-years old complaint for whistleblower retaliation under 41 U.S.C. § 4712, the National Defense Authorization Act

1

("NDAA"), and Defendants' collective failure to discharge their statutory duty of issuing a final order regarding Plaintiffs' retaliation complaint.

2. In 2015, Plaintiff Tammye Pirie was employed by Pikes Peak Community College ("PPCC") as its Director of Grants. Plaintiff Miles Pimentel was employed as PPCC's Assistant Director of Grants.

3. On April 15, 2015, PPCC terminated Ms. Pirie and Mr. Pimentel solely for raising concerns about PPCC's collaborative partner, University of Colorado, Colorado Springs' (UCCS) violations of required federal grant regulations and Office for Violence Against Women ("OVW") grant conditions, relating to Prime Award No. 2014-WA-AX-0014 (the "OVW grant"). UCCS and PPCC received the OVW grant to reduce domestic violence, dating violence, sexual assault, and campus stalking.

4. The OVW is an office within the United States Department of Justice.

5. On April 19, 2015, following their illegal and retaliatory termination, Plaintiffs submitted their complaint for whistleblower retaliation to the Department of Justice's ("DOJ's") Office of the Inspector General ("OIG").

6. Years passed.

7. Finally, in April 2019 the Department of Justice's Office of Inspector General issued a final Report of Investigation ("ROI") regarding Plaintiffs' whistleblower complaint. This ROI was sent to Plaintiffs in June 2019.

8. Under 41 U.S.C. § 4712(c)(1), one or more Defendants were required, "not later than 30 days after" receiving the ROI to "determine whether there [was] sufficient basis" to conclude Plaintiffs suffered whistleblower retaliation for raising their concerns and issue a final determination regarding Plaintiffs' claims.

9. On March 18, 2024, Plaintiffs, through undersigned counsel, demanded that Defendants issue a final determination under 41 U.S.C. § 4712(c)(1).

10. To date, no Defendant nor any federal agency has issued a final determination regarding Plaintiffs' retaliation claims under the NDAA pursuant to § 4712(c)(1).

11. Plaintiffs now seek an order compelling Attorney General Merrick B. Garland, as the head of the United States Department of Justice, or alternatively, Secretary Miguel Cardona, as the Head of the U.S. Department of Education, to issue a final determination regarding their claims pursuant to § 4712(c)(1).

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 1331, and 5 U.S.C. §§ 701-706 (actions under the Administrative Procedure Act ("APA")).

13. The Court may exercise personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts with Colorado.

14. Venue is proper in this judicial district pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES AND IMPORTANT NON-PARTIES

15. Plaintiff Tammye Pirie is a professional with over thirty (30) years of experience working with federal grants and grant requirements. She holds a Master's in Public Health, and had acquired two grant industry certifications: Grant Professional Certification and Certified Grant Management Specialist. Until her termination on April 15, 2015, Ms. Pirie was PPCC's Director of Grants.

16. Plaintiff Miles Pimentel is a professional with over twenty (20) years of experience working with federal grants and grant requirements. He holds a Master's in Business Administration, and has earned Certified Grant Management Specialist and several grant management certificates. Until his termination on April 15, 2015, he was PPCC's Assistant Director of Grants.

17. The University of Colorado, Colorado Springs ("UCCS") is a public research university located in Colorado Springs, Colorado, and belongs to the University of Colorado system. UCCS was the primary grantee of OVW Grant Award No. 2014-WA-AX-0014, a grant intended to reduce domestic violence, dating violence, sexual assault, and campus stalking.

18. Pikes Peak Community College ("PPCC") is a community college in Colorado Springs, Colorado. PPCC was a grantee on the OVW grant. At all relevant times, PPCC was also a federal contractor and/or grantee with, *inter alia*, the United States Department of Education.

19. Merrick B. Garland is the United States Attorney General and head of the United States Department of Justice.

20. The United States Department of Justice is responsible for enforcing federal law in the United States. Its head is Merrick B. Garland, the United States Attorney General.

21. The Office on Violence Against Women is an office of the United States Department of Justice. The Office on Violence Against Women implements the provisions of the Violence Against Women Act and provides national leadership on issues of domestic violence, sexual assault, dating violence, and stalking.

4

22. Miguel Cardona is the United States Secretary of Education and head of the United States Department of Education.

23. The United States Department of Education is responsible for establishing federal policies regarding education. Its head is Miguel Cardona, the United States Secretary of Education.

## COMPLAINT ALLEGATIONS

### *Plaintiffs Discover and Report UCCS's Misuse of Federal Grant Funds & Suffer Retaliatory Termination[1]*

24. Plaintiffs were employed by PPCC in Spring of 2015.

25. At that time, UCCS and PPCC were recipients of the Office of Violence Against Women Grant Award No. 2014-WA-AX-0014. Under the OVW grant, UCCS and PPCC were given three years for UCCS to develop and coordinate campus services to reduce domestic violence, dating violence, sexual assault, and campus stalking.

26. At that time, PPCC was a direct federal contract and/or grantee with, *inter alia*, the U.S. Department of Education.

27. UCCS and PPCC executed an agreement, under which both were full partners in the administration of the OVW grant. This partnership was approved by the OVW.

28. On April 3, 2015, per termination documentation, UCCS abruptly ended Carrie Finkill's employment and terminated the DOJ OVW grant position she held. Ms. Finkill was a "key/essential" team member of the OVW grant defined by her

---

[1] The allegations in this section of the Complaint are not exhaustive of the evidence supporting Plaintiffs' substantive claims under 41 U.S.C. § 4712, and are provided only for context as to the nature of the claims that Defendants have unreasonably and illegally delayed issuing a final order regarding.

5

experience and skills being included in the award application and administrative contract. With only three (3) grant positions, she held an essential resource role in the work performance of the grant.

29. UCCS terminated Ms. Finkill without adherence to Part 200-Uniform Administration Requirements, Cost Principles and Audit Requirements for Federal Awards § 200.407 Prior Written Approval (prior approval) from the OVW.

30. The OVW grant required UCCS and PPCC to seek and secure prior approval from the OVW before terminating key or essential personnel for the OVW grant and its administration, including Ms. Finkill. Prior approval would have also included approval of budgetary impacts and grant scope modifications due to the termination's impact.

31. On April 10, 2015, Mr. Pimentel contacted Dr. Catherine Kaukinen at UCCS about Ms. Finkill's termination.

32. Dr. Kaukinen informed Mr. Pimentel that Ms. Finkill was terminated. She verified that no DOJ OVW communication or approvals from the assigned OVW Federal Program Officer were obtained. Dr. Kaukinen relayed to Mr. Pimentel that UCCS intended on reallocating Ms. Finkill's federally funded salary to a university-level compliance position at UCCS. The compliance position was unrelated to the OVW grant or UCCS's duties under it, and was not an approved use of the grant funds.

33. Based on Ms. Kaukinen's statements, Mr. Pimentel became concerned that UCCS was misallocating federal grant funds, in violation of the OVW grant and federal law. He reported his concerns to, *inter alia*, his supervisor, Ms. Pirie.

34. On April 10, 2015, after discussing Ms. Finkill's termination with Mr. Pimentel, Ms. Pirie agreed with Mr. Pimentel's assessment that the actions of UCCS violated grant regulations and were a potential misuse of DOJ OVW grant funds. Ms. Pirie in turn relayed her and Mr. Pimentel's concerns to her Supervisor, Brenda Lauer, and PPCC's President, Lance Bolton. Ms. Pirie sent additional emails and communications regarding their concerns on April 12, 2015.

35. On April 15, 2015, PPCC terminated Ms. Pirie and Mr. Pimentel in retaliation for their reporting of concerns regarding, *inter alia*, the violation of rules and regulations relating to the OVW grant.

***Plaintiffs File Their Whistleblower Retaliation Complaint Under the NDAA, 41 U.S.C. § 4712, & the DOJ OIG Investigates***

36. On April 19, 2015, Plaintiffs timely submitted their complaint of whistleblower retaliation under the NDAA to the DOJ OIG.

37. In November 2015, Greg P. Thompson, a DOJ special agent, contacted Ms. Pirie regarding her whistleblower retaliation claim. At that time, Mr. Thompson requested additional information from Ms. Pirie regarding her termination. He eventually interviewed Ms. Pirie regarding the complaints.

38. Mr. Craig Trautner, Senior Special Agent, US Department of Justice, Office of the Inspector General interviewed Plaintiffs in January and February 2016. In these interviews, Mr. Trautner asked Plaintiffs about UCCS's misuse of OVW grant funds, and UCCS's violations of governing federal grant regulations.

39. On January 22, 2018, nearly three years after Plaintiffs filed their whistleblower retaliation complaint, Mr. Trautner contacted Ms. Pirie to inform her that a Report

7

of Investigation ("ROI") concerning her complaint had been completed. Mr. Trautner also stated the ROI had been sent to DOJ OIG for review.

40. On February 8, 2018, Mr. Trautner again contacted Ms. Pirie, stating the ROI was with the DOJ OIG General Counsel's office for review, and that he did not have a "timetable" for when the review process would be completed.

41. In November 2018, Mr. Trautner sent Plaintiffs a draft ROI. This report concluded that Ms. Pirie and Mr. Pimentel established *prima facie* cases of whistleblower retaliation, but the report also contained factual inaccuracies about Plaintiffs' claims.

42. Ms. Pirie and Mr. Pimentel contacted Mr. Trautner to discuss the report's findings and their concerns about its factual findings. Mr. Trautner contacted Plaintiffs regarding their factual concerns on November 14, 2018, and invited Plaintiffs to provide feedback on the report's factual findings. Plaintiffs replied with their concerns the following day.

***The DOJ OIG Issues Several ROIs to Plaintiffs Regarding Their Complaints, and Agency Infighting Prolongs Resolution of Plaintiffs' Claims***

43. On March 29, 2019, the OIG issued an ROI to Plaintiffs (the "March 2019 ROI"). The March 2019 ROI contained several factual inaccuracies.

44. On April 11, 2019, Plaintiffs contacted Mr. Trautner regarding the March 2019 ROI's inaccuracies and demanded corrections.

45. On April 18, 2019, Mr. Trautner contacted Plaintiffs, stating the March 2019 ROI was flawed and did not accurately reflect the results of the investigation he conducted of the January 2018 investigative report. He apologized for the error.

46. The OIG sent Plaintiffs a corrected ROI on June 18, 2019 (the "June 2019 ROI"). The June 2019 ROI instructed Plaintiffs to disregard the March 2019 ROI. *See* June ROI, attached as Exhibit A.

47. The June 2019 ROI reached the following conclusions:

    a. Ms. Pirie established that her protected reporting under Section 4712(a) was a contributing factor in PPCC's decision to terminate her employment;

    b. Respondents failed to establish by clear and convincing evidence that Ms. Pirie would have been terminated in the absence of her protected activity under Section 4712(a);

    c. Mr. Pimentel established that his protected reporting under Section 4712(a) was a contributing factor in PPCC's decision to terminate his employment; and

    d. Respondents established by clear and convincing evidence that Mr. Pimentel would have been terminated in the absence of his protected activity under Section 4712(a).[2]

---

[2] Plaintiffs challenge the June 2019 ROI's conclusions regarding certain aspects of Plaintiffs' claims and the legal frameworks it applied in reaching them. Plaintiffs communicated their merits challenge to the June 2019 ROI in their "Demand for Final Order" sent March 18, 2024, detailing their arguments regarding the June 2019 ROI's flawed legal analysis and conclusions. To date, no agency has responded to Plaintiffs' March 18, 2024, letter. Because this Complaint concerns agency inaction—rather than the underlying merits of June 2019 ROI's conclusions—Plaintiffs briefly summarize the ROI here. Plaintiffs reserve the right to plead additional facts and advance additional legal, merits-based arguments regarding the June 2019 ROI's findings and legal conclusions in any subsequent motion or pleading before this Court or any other adjudicative body or agency.

48. In both the March 2019 and June 2019 ROIs, the DOJ OIG determined that the agency "concerned with" Plaintiffs' complaints was the DOJ.

49. The OIG subsequently incorrectly determined that the NDAA's whistleblower protections did not cover Plaintiffs, and then reversed this determination in a June 7, 2022, letter sent by Michael E. Horowitz, the DOJ Inspector General, to the Secretary of the U.S. Department of Education. *See* June 7, 2022, Letter, attached as Exhibit B.

50. In this June 7, 2022, letter, which contained the OIG's June 2019 ROI concerning Ms. Pirie's and Mr. Pimentel's retaliatory termination, the OIG stated PPCC was a "recipient of numerous U.S. Department of Education grants, and therefore, its employees [were] covered under [the] federal whistleblower protection law, 41 U.S.C. § 4712" effective at the time it terminated Ms. Pirie and Mr. Pimentel. *Id.*

51. Put differently, **seven years** after Plaintiffs submitted their whistleblower complaints, the DOJ OIG concluded they were protected under the NDAA's whistleblower anti-retaliation provisions.

52. The June 7, 2022, letter continued, stating that Plaintiffs properly reported their complaints to the DOJ OIG, and the OIG investigated their complaints, but that the Department of Education was the head of the "agency concerned" with Plaintiffs' complaints, because in 2015 PPCC received Department of Education grants for which it was the primary grantee.

53. For this reason, the June 7, 2022, letter stated, the Department of Education was required to issue an order regarding the June 2019 ROI "no later than 30 days"

after receiving it. *See* Exhibit B; *see also* 41 U.S.C. § 4712(c)(1) (providing 30 day time limit).

54. According to the DOJ OIG, the Department of Education was the proper agency with authority to issue a final order regarding Plaintiffs' complaints.

55. On August 18, 2022, Mr. Adam Miles, Senior Counsel to the DOJ Inspector General, informed Plaintiffs that the Department of Education determined—despite the DOJ OIG's conclusion it was the agency concerned with Plaintiffs' complaints—that it did not have jurisdiction to adjudicate Plaintiffs' complaints.

56. On March 18, 2024, Plaintiffs sent a letter to Defendants demanding that an executive agency head issue a final order pursuant to 41 U.S.C. § 4712(c)(1) regarding Plaintiffs' claims within thirty (30) days.

57. To date, neither the head of the Department of Education nor the head of the Department of Justice have issued *any* order regarding the final June 2019 ROI pursuant to—and *required by*—41 U.S.C. § 4712(c)(1).

## CLAIMS FOR RELIEF

### First Claim
### Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, 5 U.S.C. § 551(13)
### Unlawfully Withholding Agency Action
### Against all Defendants

58. The allegations in this Complaint are incorporated herein as if fully stated.

59. The Administrative Procedure Act ("APA") permits federal courts to "compel agency action unlawfully withheld." 5 U.S.C. § 706(1).

60. Defendants' failure to issue a final order regarding the June 2019 ROI constitutes agency action unlawfully withheld.

11

61. The NDAA is crystal clear: "Not later than 30 days after receiving an Inspector General report," the "head of the executive agency concerned shall determine" whether there is "sufficient basis" to conclude a covered entity violated the NDAA, and issue an order denying or granting relief to complainants. 41 U.S.C. § 4712(c)(1).

62. Under the NDAA's plain statutory language, the head of the executive agency concerned is required to issue a final order within 30 days after receiving an ROI.

63. To date, **no agency head** has issued **any order** regarding the June 2019 ROI. Thus, Defendants have violated the NDAA's requirement that the head of the "agency concerned ***shall***" issue a final order regarding the June 2019 ROI. *Id.* (emphasis added).

64. This failure to issue a final order constitutes unlawfully withheld agency action within the meaning of the APA.[3]

65. By reason of the foregoing, Plaintiffs are entitled to judicial review of Defendants' unlawfully withheld agency action, and are entitled to compel agency action—issuing a final order pursuant to 41 U.S.C. § 4712(c)(1)—that has been unlawfully withheld.[4]

---

[3] Such withholding of a required agency action does not deprive the agency of jurisdiction to issue a final order. *Jacobs Project Mgmt. Co. v. United States Dep't of Interior*, 64 F.4th 123, 127 (3d Cir. 2023) (stating section 4712(c)'s "deadlines are not jurisdictional.").

[4] Plaintiffs take no position regarding which agency head is the "concerned" agency head under 41 U.S.C. § 4712(c)(1). Nor are they able to take such a position: the Department of Education and Department of Justice have taken opposite views on who is proper agency head under the NDAA. Because neither agency has provided any clarity on this matter—and certainly has not issued a final order—Plaintiffs bring their APA claims against all Defendants.

**Second Claim**
**Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–706,**
**5 U.S.C. § 551(13)**
**Unreasonably Delayed Agency Action**
**Against all Defendants**

66. The allegations in this Complaint are incorporated herein as if fully stated.

67. The APA permits federal courts to "compel agency action . . . unreasonably delayed." § 706(1).

68. Defendants' failure to issue a final order regarding the June 2019 ROI constitutes agency action unreasonably delayed.

69. The NDAA is crystal clear: "Not later than 30 days after receiving an Inspector General report," the "head of the executive agency concerned shall determine" whether there is "sufficient basis" to conclude a covered entity violated the NDAA, and issue an order denying or granting relief to complainants. § 4712(c)(1).

70. Under the NDAA's plain statutory language, the head of the executive agency concerned is required to issue a final order within 30 days after receiving an ROI

71. To date, **no agency head** has issued **any order** regarding the June 2019 ROI. Thus, Defendants have violated the NDAA's requirement that the head of the "agency concerned **shall**" issue a final order regarding the June 2019 ROI. *Id.* (emphasis added).

72. This failure to issue a final order constitutes unreasonably delayed agency action within the meaning of the APA.

73. By reason of the foregoing, Plaintiffs are entitled to judicial review of Defendants' unreasonably delayed agency action, and are entitled to compel agency action—

issuing a final order pursuant to 41 U.S.C. § 4712(c)(1)—that has been unreasonably delayed.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that this Court enter judgment against Defendants for the following:

a. Appropriate and equitable relief, including but not limited to, an order compelling the issuance of a final order pursuant to 41 U.S.C. § 4712(c)(1);

b. All costs and expenses of this litigation, including attorneys' fees and costs of court, as permitted by statute; and

c. All other relief on behalf of Plaintiffs to which they may be entitled and that the Court deems just and proper.

Respectfully submitted this 13th day of June, 2024:

*s/Clayton E. Wire*
CLAYTON E. WIRE, BAR NO. 41717
KENDRICK DAVIS, BAR NO. 58341
Ogborn Mihm LLP
1700 Lincoln Street, Suite 2700
Denver, CO 80203
(303) 592-5900
Clayton.wire@omtrial.com
Kendrick.davis@omtrial.com
*Counsel for Plaintiffs*